1

2

3

4

5

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8

9  MELCHOR BARAJAS,                           No. C 08-4911 SI (pr)

10          Petitioner,                       **ORDER DENYING HABEAS
                                              PETITION**
11     v.

12  BEN CURRY, warden,

13          Respondent.
   _____/
14

15                          **INTRODUCTION**

16          Melchor Barajas, an inmate at the Correctional Training Facility in Soledad, filed this pro

17  se action seeking a writ of habeas corpus under 28 U.S.C. § 2254.  This matter is now before the

18  court for consideration of the merits of the pro se habeas petition and respondent's motion to

19  dismiss the petition as moot.  For the reasons discussed below, the petition and the motion to

20  dismiss will be denied.

21                          **BACKGROUND**

22          Barajas was convicted in Los Angeles County Superior Court of attempted murder in

23  1990 with enhancements for use of a firearm and for discharging a firearm from a vehicle. He

24  was sentenced to life in prison with the possibility of parole, plus a total of seven years for the

25  enhancements.  His habeas petition does not challenge his conviction but instead challenges an

26  October 24, 2006 decision by the Board of Parole Hearings ("BPH") that found him not suitable

27  for parole.

28          The BPH identified the circumstances of the commitment offense, the need for additional

*United States District Court*
*For the Northern District of California*

programming, and a concern about the psychological report as the reasons for finding him unsuitable.

Barajas sought relief in the California courts.  The Los Angeles County Superior Court denied his petition for writ of habeas corpus in two reasoned decisions.  The California Court of Appeal and California Supreme Court summarily denied his petitions for writ of habeas corpus.

Barajas then filed his federal petition for writ of habeas corpus.  The court found cognizable his claim that his right to due process was violated because the evidence was insufficient to support the BPH's decision that he was unsuitable for parole.  Respondent filed an answer and Barajas filed a traverse.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged action concerns the execution of the sentence of a prisoner housed at a prison in Monterey County, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000).  Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole.  See Hayward v. Marshall, 603 F.3d 546, 563 (9th Cir. 2010) (en banc); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

## DISCUSSION

A.    State Law Standards For Parole Those Convicted Of Attempted Murder

California uses indeterminate sentences for most non-capital murders and attempted murders.  For attempted first degree murders, the term is life imprisonment with the possibility of parole.  Cal. Penal Code §§ 190, 664; see generally In re Dannenberg, 34 Cal. 4th 1061, 1078 (Cal. 2005).

A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a).  Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this

individual, and that a parole date, therefore, cannot be fixed at this meeting."  Cal. Penal Code § 3041(b).  The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity.  Dannenberg, 34 Cal. 4th at 1070-71.

One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides:  "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c).  A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d).  A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[1]  The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  15 Cal. Code Regs. § 2402(a).  The panel may consider all relevant and reliable information available to it.  15 Cal. Code Regs. § 2402(b).  These regulations cover both murders and attempted murders as to which the perpetrator has been sentenced to life imprisonment pursuant to California Penal Code § 664.  See 15 Cal. Code Regs. § 2400.

The "Penal Code and corresponding regulations establish that the fundamental consideration in parole decisions is public safety . . . [T]he core determination of 'public safety' under the statute and corresponding regulations involves an assessment of an inmate's current dangerousness."  In re Lawrence, 44 Cal. 4th 1181, 1205 (Cal. 2008)(emphasis in source).

---

[1]The listed circumstances tending to show unsuitability for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior.  15 Cal. Code Regs. § 2402(c).  The listed circumstances tending to show suitability for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior.  15 Cal. Code Regs. § 2402(d).

4

1    Where "evidence of the inmate's rehabilitation and suitability for parole under the governing

2    statutes and regulations is overwhelming, the only evidence related to unsuitability is the gravity

3    of the commitment offense, and that offense is both temporally remote and mitigated by

4    circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the

5    commitment offense involved aggravated conduct does not provide 'some evidence'

6    inevitably supporting the ultimate decision that the inmate remains a threat to public safety."

7    Id. at 1191 (emphasis in source).

8

9    B.    Federal Habeas Relief On Parole Denial Claims

10         The U. S. Constitution's Due Process Clause does not itself provide state prisoners with

11   a federal right to release on parole.  Hayward v. Marshall, 603 F.3d 546, 562 (9th Cir. 2010) (en

12   banc).  The substantive law of a state might create a right to release on parole, however.  See id.

13   at 555, 559.  Although Hayward purported not to reach the question whether a California's

14   substantive law created a federally protected liberty interest, see id. at 562, later cases from the

15   Ninth Circuit have said or assumed it does.  See Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir.

16   2010) ("state-created rights may give rise to liberty interests that may be enforced as a matter

17   of federal law. . . .  By holding that a federal habeas court may review the reasonableness of the

18   state court's application of the California 'some evidence' rule, Hayward necessarily held that

19   compliance with the state requirement is mandated by federal law, specifically the Due Process

20   Clause." ); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) ("In Hayward, we held that due

21   process challenges to California courts' application of the 'some evidence' requirement are

22   cognizable on federal habeas review under AEDPA"); id. ("we must examine the nature and

23   scope of the federally enforceable liberty interest created by California's 'some evidence'

24   requirement"); see also Pirtle v. California Board of Prison Terms, 611 F.3d 1015, 1020 (9th Cir.

25   2010) ("'California's parole scheme gives rise to a cognizable liberty interest in release on

26   parole.'  McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir 2002).  That liberty interest

27   encompasses the state-created requirement that a parole decision must be supported by 'some

28

5

evidence' of current dangerousness. <u>Hayward</u> [603 F.3d at 562-63.]")   <u>Hayward</u>'s application and these later cases make it clear that in the Ninth Circuit there is federal habeas relief available under § 2254 for California prisoners denied parole without sufficient evidence, although it now appears that the emphasis has shifted from § 2254(d)(1) to § 2254(d)(2).

A federal district court reviewing a California parole decision "must determine 'whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.''" <u>Hayward</u>, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)).   That requirement was summarized in <u>Hayward</u> as follows:

> As a matter of California law, "the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety."   There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety."   The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post- incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. [¶]  Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

<u>Hayward</u>, 603 F.3d at 562 (footnotes omitted) (quoting <u>Lawrence</u>, 44 Cal. 4th. at 1210, 1213-14); <u>see also</u> <u>Cooke</u>, 606 F.3d at 1216 (describing California's "some evidence" requirement).

When a federal court considers a habeas case directed to a parole decision, the "necessary subsidiary findings" and the "ultimate 'some evidence' findings" by the state courts are factual findings – and thus are reviewed by the federal court under 28 U.S.C. § 2254(d)(2) for whether the decision was "based on an unreasonable determination of the facts in light of the evidence." <u>Cooke</u>, 606 F.3d at 1214 (citing <u>Hayward</u>, 603 F.3d at 563).

C.    <u>Barajas' Case</u>

1.    <u>His Circumstances</u>

<u>Commitment offense</u>: One of the BPH commissioners read an excerpt from the probation officer's report that described the shooting that led to Barajas' conviction:

6

The inmate [was] seated in the rear of a vehicle [and] the crime partner [was] the driver of the vehicle. They passed 10844 Wygand where victims 1 and 2 were standing and the inmate fired six shots at the victim striking both victims. A police vehicle heard the shots and observed the vehicle speeding away from the location. Prior to the officer stopping the vehicle the gun was thrown from the car to the ground next to the vehicle. The inmate admits to the officers that he did the shooting because they were shot at earlier by rival gang members from the Colonial Watts. Victim 1 sustained a gunshot wound to his back. . . . Victim 2 sustained a gunshot wound to his left hip and left side.

October 24, 2006 BPH hearing reporter's transcript ("RT") at 10-11.   One of the victims was paralyzed as a result of being shot.  RT 38, 46.  There were a few other people standing with the two victims in the group at which Barajas fired the gun.  RT 39.

Barajas denied that he was in a gang, although the people he was with were gang members.  RT 11.  Barajas claimed that the gang members were talking to his neighbor, and then his neighbor told him they were going to get some beer, so Barajas went with them.  RT 12.  On the way, he found out the gang members were going to go looking for someone with whom they had a problem.  When they arrived at that location, they were shot at by rival gang members. Barajas said his group then retrieved a gun to shoot back at them.  RT 12.  The persons he shot at were not armed at the time and he was "not sure" whether they were the men that shot at his acquaintances.  RT 36.  Barajas said he originally wasn't supposed to be the shooter, but the weapon was handed to him and he fired the shots.  RT 12-13.  (Elsewhere he said he "made the decision to grab" the gun.  RT 41.)  When asked how he felt about shooting the victims, Barajas said he felt "embarrassed" and "pretty bad for these men."  RT 13.  When asked why he fired the shots, Barajas said: "I don't know."  RT 37.  The District Attorney and at least one commissioner found it inexplicable why Barajas would have done the shooting under the circumstances he had described of being a non-gang member  tag-along with gang members who were retaliating against rival gang members.  RT 45.

Pre-Offense History: At the time of the shooting, Barajas had only been living in the United States 4-6 months, having come illegally from Mexico.  RT 13-14.  Some of his family lived in Mexico and some lived in the United States.  He apparently had no criminal history. See 12/18/03 psychological evaluation, p. 4.  There was an immigration hold on him (meaning that deportation was likely if released from prison).  RT 27.

Barajas said he used to drink alcohol. He started when he was 13-14 years old. RT 15. He also used marijuana, and started doing that at about the same time. RT 15. His drug use escalated to include cocaine, and he used that for a couple of years. RT 16.

Prison Disciplinary History: Barajas had received two CDC-115s: one for fighting in 1992 and one for fighting in 1991. The commissioner commended him for staying out of trouble since then. RT 26. Barajas also had a couple of CDC-128 counseling memoranda for refusing orders in 1995 and 1997. RT 47.

In-Custody Activities: Barajas had engaged in some educational activities, had participated in NA and AA since 1996, and had records of having participated in various programs recently. RT 18-19, 23. He said also had taken some correspondence courses and other self-improvement courses in the last couple of years. RT 18-20. He also participated in recreational sports. RT 20-21. Other than AA and NA, he appeared to have done little self-help programming before the two years preceding the hearing. See Resp. Exh. 3 at Exhs. C-D.

He had held various jobs, such as being a teacher's aide, a porter, working on the yard crew, working in the machine shop and working in the culinary division. He always had "pretty good work reports." RT 21. He had completed a vocational program in 2005 in offset print. RT 21-22. He earned his GED in 2000. RT 22.

Psychological Reports: The 2006 psychological evaluation was favorable. The psychologist noted that Barajas expressed regret and remorse for the crime, that he was responsible for what occurred that day and had said that "'no one put a gun in my hands.'" Resp. Exh. 3 at 8/15/2006 Psychological Evaluation, p. 3. This showed "a slight, yet significant, change in his presentation and would indicate taking more personal responsibility for his actions that day." Id. The psychologist noted that Barajas denied being in a gang, although his central file had information that he was in a gang. The psychologist opined that if released to the community, Barajas' "violence potential is about the same as the average citizen." Id. This was an improvement from the 2003 evaluation, in which a psychologist had opined that, "if released to the community his violence potential is estimated to be no more than slightly higher than the

1    average citizen in the community."  RT 31.

2        Parole plans: Barajas had parole plans.  He had a job offer from a relative in Mexico.  RT

3    33-34.   And his father offered to house him in Tijuana.  RT 34.  He also had a letter from a

4    facility to address substance abuse treatment in Mexico.  RT 35.

5

6            2.     BPH's Decision And State Court Review

7        The BPH determined that Barajas was "not suitable for parole" because he would "pose

8    an unreasonable risk of danger to society or a threat to public safety if released at this time."  RT

9    52.  The BPH relied primarily on the commitment offense.  The offense was carried out in an

10   especially cruel manner, multiple victims were injured in the shooting, the offense was carried

11   out in an dispassionate and calculated manner and a manner that demonstrated an exceptionally

12   callous disregard for human suffering.  RT 52.  The motive was "incredibly trivial and

13   inexplicable."  RT 52.  The second factor the BPH relied on was that Barajas "has programmed

14   in a limited manner while incarcerated until 2004 and has not sufficiently participated in

15   beneficial self-help and/or therapy programs."  RT 53.   The third factor relied on was that the

16   2006 psychological report "is not totally supportive of release" in that the psychologist noted that

17   there had been a "slight yet significant change in the presentation" which, when combined with

18   the earlier report in 2003 that noted some insight by the prisoner, led the BPH panel to conclude

19   that "there has been improvement but that more is needed."  RT 54.   The BPH panel believed

20   that Barajas was "on the right track" and was "making good progress," but that the change had

21   been since 2004 and that the progress needed to be maintained over a longer period of time.  RT

22   55.  This was a prisoner whose "gains are recent and he must demonstrate an ability to maintain

23   gains over an extended period of time if paroled."  RT 55.  The second commissioner explained

24   that Barajas needed to maintain his gains to convince a later panel and the Governor that he was

25   suitable for parole because "a lot of years went by" before he started programming.  RT 57.

26       The Los Angeles County Superior Court upheld the BPH's decision in a reasoned

27   decision.  See Petition Exh. A.   As the last reasoned decision from a state court, the decision

28

                                         9

from the superior court is the decision to which § 2254(d) applies.  See Ylst v. Nunnemaker, 501
U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).   The
superior court found that some evidence did support the BPH's conclusion that Barajas' release
would pose an unreasonable risk of danger to society if released and was unsuitable for parole.
Petition Exh. A at 1.   The superior court found "no evidence to support the Board's finding that
the offense was committed in a manner which demonstrates a callous disregard for human
suffering" and saw it as an average attempted murder.  Id at 3.   That court did find some
evidence to support the BPH's remaining findings regarding the commitment offense and those
together constituted some evidence that it was committed in an especially heinous, atrocious or
cruel manner.  Id   That is, there was some evidence of multiple victims, that the crime was
committed in a calculated and dispassionate manner, and that the motive was very trivial.  Id. at
4-5.   The court further explained that in addition to the commitment offense, the BPH
"considered and weighed several other factors, noting that Petitioner's involvement in self-help
programs in 2004 and 2005, while positive, were relatively recent."  Id. at 4.   The court also
found that there was some evidence to support the BPH's finding that Barajas' insight into why
he committed the crime was not fully developed, as he said he didn't know why he committed
the offense.

3.      Analysis Of Habeas Claim

There was sufficient evidence for the state superior court to uphold the BPH's decision.
The commitment offense was an aggravated one, as Barajas had committed a drive-by shooting
and fired shots into a group of people, hitting two of them.    The shooting was done in a
calculated and dispassionate manner as, after allegedly being shot at, Barajas and his
acquaintances went to retrieve a gun and returned to shoot at a group of people.  Barajas didn't
know if the people he shot at were the people who did the earlier alleged shooting.  None of the
people he shot at were armed.  The motive, a gang retaliatory shooting, was trivial.  The
evidence was sufficient to show that most of his prison self-help programming was relatively

recent and that he needed more time to explore his responsibility for the crime. His insight was a work in progress, according to the psychologist. Although the shooting looked very gang-like, Barajas denied that he was in a gang. His statement that he did not know why he took the gun and shot at the group of people showed that he could benefit from additional programming. The reasons were supported by sufficient evidence, and so was the reasoning: the identified factors were relevant to and provided reliable evidence in support of the ultimate determination that he was currently dangerous.

The information relied upon by the BPH and state court supported a determination "that the implications regarding the prisoner's dangerousness that derive from his . . . commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Lawrence, 44 Cal. 4th at 1214. Barajas' generally positive behavior in prison counts in his favor, but it cannot be said that at this point it makes a finding that he is not suitable for parole unsupported by evidence. Cf. Shaputis, 44 Cal. 4th at 1259-60 (upholding unsuitability determination for prisoner who, despite favorable programming and prison behavior, still had not gained insight into his domestic violence and murder of his wife). The state court's rejection of Barajas' petition was not an unreasonable application of California's "some evidence" requirement and was not based on an unreasonable determination of the facts in light of the evidence. Barajas therefore is not entitled to federal habeas relief.

D.    Respondent's Motion To Dismiss

Respondent has moved to dismiss the petition as moot. Respondent argues that the petition is moot because another parole consideration hearing was held in 2010, and Barajas was found suitable at that hearing; therefore, in respondent's view, Barajas has received the best result he could receive if he prevailed in his challenge to the 2007 hearing decision. Not true. The remedy available to a successful parole habeas applicant is not limited to another hearing and instead may include an order for his release from custody. See Pirtle v. California Board of Prison Terms, 611 F.3d 1015, 1025 (9th Cir. 2010) (rejecting argument that the appropriate

remedy would be to remand the case to the parole board for another hearing).  "Ordering the release of a prisoner is well within the range of remedies available to federal habeas courts." <u>Id.</u> Had a constitutional violation been found with regard to the 2007 parole hearing, this court would not be limited to ordering a new parole hearing. The motion to dismiss the petition as moot therefore is DENIED.   (Docket # 6.)  There might be a more compelling argument for mootness if the  petitioner was no longer in prison, but that is not the situation here.

Respondent also filed a contingent motion for an additional amount of time to file a supplemental brief regarding the <u>Hayward</u> case if his motion to dismiss was denied.     The motion for an extension of time to file a supplemental brief is DENIED.  (Docket # 7, # 10.) There was no need for respondent to wait for the ruling on the motion to dismiss to brief the <u>Hayward</u> question.

E.      <u>Certificate Of Appealability</u>

A certificate of appealability is GRANTED as to the due process claim. <u>See</u> 28 U.S.C. § 2253(c).  Reasonable jurists could find the district court's assessment of the claim debatable. <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Petitioner is cautioned that the court's ruling on the certificate of appealability does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

**CONCLUSION**

For the foregoing reasons, the petition is denied on the merits.  The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 4, 2010

SUSAN ILLSTON
United States District Judge

12